UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| THE ESTATE OF ROBERT BEAR SHIELD; JERRY BEAR SHIELD, SR., JERRY BEAR SHIELD, JR., JAYDEE SPOTTED ELK, AMERICAN ZURICH INSURANCE COMPANY, BROUGHT IN FROM 19-5044 WHEN CASES WERE CONSOLIDATED; AND HEAVY CONSTRUCTORS INC., BROUGHT IN FROM 19-5044 WHEN CASES WERE CONSOLIDATED; | 5:18-CV-05036-JLV |
| | REPORT AND RECOMMENDATION AS TO MOTION TO DISMISS BY DEFENDANT KUMHO TIRE (VIETNAM) CO., LTD. |
| Plaintiffs, | DOCKET NO. 38 |
| vs. | |
| KUMHO TIRE U.S.A., INC., KUMHO TIRE MERGER SUBSIDIARY, INC., KUMHO TIRE CO. INC., KUMHO TIRE (VIETNAM) CO., LTD., BROUGHT IN FROM 19-5044 WHEN CASES WERE CONSOLIDATED; | |
| Defendants. | |

**INTRODUCTION**

This matter represents the consolidation of two separate civil cases involving products liability-related claims arising out of the same automobile accident, allegedly caused by the malfunction of a Kumho truck tire. Now pending is a motion to dismiss by defendant Kumho Tire (Vietnam) Co., Ltd. (hereinafter "Kumho Vietnam") [Docket No. 38], which motion is directed to the amended complaint of only one group of plaintiffs—American Zurich Ins. Co. and Heavy Constructors, Inc. This matter was referred to this magistrate judge

for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Jeffrey L. Viken, then-Chief United States District Judge.  See Docket No. 43.

## FACTS

The allegedly defective Kumho tire involved in the accident at the heart of this case was manufactured in Vietnam by Kumho Vietnam.  Kumho Vietnam alleges that "if" Kumho Tire U.S.A., Inc. (hereinafter "KTUSA"), distributed the accident tire, KTUSA "would have taken possession, ownership and control of the tire at the port of Vung Tau in Vietnam."  See Docket No. 39 at p. 5.

The Kumho tire was purchased by plaintiff Heavy Constructors, Inc. ("Heavy") and placed on one of their 2002 Ford F250 flatbed pickup trucks.  All plaintiffs allege the accident was caused by a defect in the Kumho tire on that truck.  Justin Hawk Wing was an occupant of the truck at the time of the accident and sustained serious injuries.  American Zurich Ins. Co. ("Zurich"), was the workers compensation insurer for Heavy.  Zurich paid workers compensation benefits on behalf of Justin and both Zurich and Heavy now seek to recover those benefits from defendants.  Heavy and Zurich filed their complaint June 17, 2019, and amended that complaint a month later on July 26, 2019.  See Civ. No. 19-5044, Docket Nos. 1 & 12.

The individual plaintiffs--the estate of Robert Bear Shield; Jerry Bear Shield, Sr.; Jerry Bear Shield, Jr.; and Jaydee Spotted Elk—filed suit separately and seek damages on theories of negligence, strict products liability, breach of warranty, wrongful death, and negligent and intentional infliction of

2

emotional distress.  See Docket No. 1.  These individual plaintiffs sued Kumho Tire U.S.A., Inc. and Kumho Tire Merger Subsidiary, Inc. as defendants on June 1, 2018.  Id.  On July 30, 2019, both cases were consolidated, with all filing to occur in Civ. No. 18-5036 (hereinafter, whenever a Docket No. is referenced, it will be to Civ. No. 18-5036 unless otherwise noted).

Facts bearing on personal jurisdiction over Kumho Vietnam as alleged in Heavy and Zurich's amended complaint (hereinafter "amended complaint") are as follows.  The amended complaint names three defendants:  Kumho Tire Co., Inc. (hereinafter "Kumho South Korea"); Kumho Vietnam; and KTUSA. Civ. No. 19-5044, Docket No. 12 at p.1.  Only Kumho Vietnam moves to dismiss the amended complaint.  See Docket No. 38.

As to Kumho Vietnam, the amended complaint alleges that Kumho Vietnam is the "alter ego" of Kumho South Korea.  Id.  It alleges Kumho South Korea and Kumho Vietnam have officers and directors in common; Kumho South Korea finances Kumho Vietnam; Kumho South Korea pays the salaries and other expenses or losses of Kumho Vietnam; in Kumho South Korea's officers' statements and papers Kumho Vietnam is described as a department or division of Kumho South Korea; Kumho South Korea refers to business and financial responsibilities of Kumho Vietnam as its own; Kumho South Korea uses property of Kumho Vietnam as its own; and the directors and executives of Kumho Vietnam do not act independently to further the interests of Kumho Vietnam, but rather receive orders from Kumho South Korea to act in the furtherance of the interests of Kumho South Korea.  Id.

The amended complaint alleges Kumho South Korea, Kumho Vietnam and KTUSA were jointly engaged in designing, manufacturing, selling and distributing vehicle tires, including the one involved in the accident in this case.  Id.  It alleges all three defendants engaged in these activities jointly in South Dakota.  Id.

The amended complaint alleges KTUSA is also a wholly owned subsidiary of Kumho South Korea which engaged in the business of designing, manufacturing, selling and distributing vehicle tires in South Dakota, including the accident tire.  Id.  It is alleged KTUSA is Kumho South Korea's exclusive agent in the United States.  Id.  Also that KTUSA is the alter ego of Kumho South Korea.  Id.  The amended complaint alleges Kumho South Korea owns all or most of the capital stock in KTUSA; KTUSA and Kumho South Korea have common directors or officers; Kumho South Korea finances KTUSA; Kumho South Korea pays KTUSA's expenses, losses or salaries; Kumho South Korea refers in statements and papers of their officers that KTUSA is a department or division of Kumho South Korea; Kumho South Korea refers to KTUSA's business or financial responsibilities as its own; and KTUSA directors or executives do not act independently for the best interests of KTUSA but instead take their orders from Kumho South Korea in the promotion of Kumho South Korea's best interests.  Id.

The amended complaint further alleges that Kumho Vietnam received notice of the instant action within 120 days of the filing of the initial complaint and so is not prejudiced in defending this suit on the merits.  Id.  The amended

complaint alleges Kumho Vietnam knew or should have known that, but for a mistake, it should have been named in the initial complaint.  Id.  The amended complaint alleges personal jurisdiction is proper over Kumho Vietnam under theories of agency, instrumentality and alter ego such that the contacts of KTUSA may be imputed to Kumho Vietnam.  Id.

Kumho Vietnam styles its motion as a request for dismissal of the amended complaint, but in reality, the dismissal is directed only at claims against Kumho Vietnam in that pleading, not the whole pleading.  See Docket Nos. 38 & 39.  No argument is proffered in support of dismissing the other claims against the other defendants as set forth in the amended complaint. Kumho Vietnam argues this court lacks personal jurisdiction over it and that claims against it are barred by the statute of limitations.  Heavy and Zurich oppose the motion.

**DISCUSSION**

**A.    Personal Jurisdiction**

**1.    Standard for Evaluating Personal Jurisdiction Challenges**

The Eighth Circuit just this month addressed the standard for evaluating personal jurisdiction in Whaley v. Esebag, ___ F.3d ___, 2020 WL 63092 (8th Cir. Jan. 7, 2020).  When personal jurisdiction is challenged, the plaintiff bears the burden of establishing a *prima facie* showing of jurisdiction with evidence viewed in the light most favorable to the plaintiffs.  Id. at *2.  The plaintiff must allege facts in the complaint sufficient "to support a reasonable inference that defendant may be subjected to jurisdiction in the forum state."

Van Dusseldorp v. Continental Cas. Co., 2017 WL 4004421 at *2 (D.S.D. Sept. 11, 2017).  In diversity cases, federal courts apply the long-arm statute of the forum state to determine whether personal jurisdiction over the defendant exists.  Whaley, at *2.

Here, South Dakota's long-arm statute permits personal jurisdiction to be exercised to the full extent allowed by the Due Process Clause.  SDCL § 15-7-2; Van Dusseldorp, 2017 WL 4004421 at *2.  Therefore, this court can exercise personal jurisdiction over Kumho Vietnam if Heavy and Zurich can show "sufficient 'minimum contacts' exist between South Dakota and Kumho Vietnam so that 'traditional notions of fair play and substantial justice' are not offended."  Id. (quoting Internat'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  The nature of Kumho Vietnam's contacts with South Dakota must be such that Kumho Vietnam "could 'reasonably anticipate being haled into court' " here.  Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  See also Walden v. Fiore, 571 U.S. 277, 283 (2014).

Although personal jurisdiction can be general or specific (see Viasystems, Inc. v. EMB-Papst St. Georgen GmbH Co., KG, 646 F.3d 589, 593 (8th Cir. 2011), Heavy and Zurich invoke only specific jurisdiction.  "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state."  Fastpast, Inc. v. Arbela Technologies Corp., 760 F.3d 816, 820 (8th Cir. 2014).  Assertions of specific jurisdiction require the court to evaluate whether Kumho Vietnam has "purposefully directed [its] activities at residents of the forum, and the litigation

results from alleged injuries that arise out of or relate to those activities."
Whaley, at *3 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472
(1985)).  Specific jurisdiction requires a showing that the defendant "purposely
avail[ed] itself of the privilege of conducting activities within the forum State,
thus invoking the benefits and protections of its laws."  Fastpath, Inc., 760
F.3d at 821 (quoting J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873,
880 (2011) (opinion of Kennedy, J., concurring).[1]

When the basis of the lawsuit is a tort, courts evaluate specific
jurisdiction under the "effects test" established by Calder v. Jones, 465 U.S.
783 (1984), and narrowed by Walden, 571 U.S. at 284.  "First, the relationship
must arise out of contact that the 'defendant himself' created with the forum
state."  Id. (quoting Burger King, 471 U.S. at 475).  "Second, [courts] look to the
defendant's contacts and conduct with the forum state *itself*, not the
defendant's contacts with persons who reside there."  Id. (emphasis in original)
(quoting Walden, 571 U.S. at 285).

There is a five-factor test applied to evaluate minimum contacts:  "(1) the
nature and quality of contacts with the forum state; (2) the quantity of such
contacts; (3) the relation of the cause of action to the contacts; (4) the interest
of the forum state in providing a forum for its residents; and (5) convenience of
the parties."  Id.  The third factor is particularly relevant to assertions of
specific jurisdiction.  Id.  The fourth and fifth factors are less weighty and not
determinative.  Id.

---

[1] The J. McIntyre case was a plurality opinion.

A defendant challenging personal jurisdiction must support its challenge with affidavits and exhibits.  Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 820 (8th Cir. 2014).  When so supported, a plaintiff may not rely on the pleadings, but must present affidavits and exhibits opposing the motion.  Id.

## 2.    Application of the Law to Kumho Vietnam

Heavy and Zurich assert four theories of how the law would permit this court to exercise personal jurisdiction over Kumho Vietnam.  See Docket No. 46 at p. 8.  First, they assert there is ordinary specific personal jurisdiction.  Second, they assert personal jurisdiction may be exercised under the theory that Kumho Vietnam is a mere alter ego of Kumho Tire.  Third, they assert Kumho Vietnam has a "close relationship" with KTUSA.  Fourth, they assert the court may assert personal jurisdiction over Kumho Vietnam on federal claims on the basis of Kumho Vietnam's contacts with the United States and exercise jurisdiction over the state law claims under the theory of pendent jurisdiction.  Each of plaintiffs' theories are discussed below.

### a.    Supplemental Jurisdiction

The common law concept of pendent subject matter jurisdiction no longer exists.  Instead, the prior common law concepts of pendent and ancillary subject matter jurisdiction were combined and are now encompassed in the statutorily defined "supplemental jurisdiction."  See 28 U.S.C. § 1367.  Section 1367 of Title 28 provides that a court may take supplemental jurisdiction over state law claims that would otherwise not fall within the court's jurisdiction if the court has jurisdiction over other claims and both types of claims arise out

of the same case or controversy within the meaning of Article III of the United States Constitution.  See 28 U.S.C. § 1367(a).

Heavy and Zurich argue that the court has personal jurisdiction over Kumho Vietnam because plaintiffs have pled a claim under the Magnuson-Moss Warranty Act, a federal claim.  Personal jurisdiction over federal claims, plaintiffs argue, is measured by a defendant's contacts with the nation, not with the forum state.  Therefore, plaintiffs argue (1) Kumho Vietnam has sufficient contacts with the United States so as to provide for personal jurisdiction over the federal Magnuson-Moss claim and, therefore, (2) the court may exercise personal supplemental jurisdiction[2] over Kumho Vietnam on the state law claims even if plaintiffs are unable to establish sufficient minimum contacts with South Dakota.

---

[2] The Eighth Circuit has held that § 1367 confers supplemental jurisdiction with respect to *both* subject matter and personal jurisdiction where the same case or controversy requirement is met.  Silent Drive, Inc. v. Strong Indust., Inc., 326 F.3d 1194, 1206 (8th Cir. 2003).  The Silent Drive court cited 13 Charles Alan Wright & Arthur R. Miller, Fed. Pract. & Pro., § 3523.1 (2002), in support of this assertion.  The citation by the Silent Drive court does not support the court's assertion and the assertion is almost certainly wrong.  As Wright & Miller write elsewhere, § 1367 is a form of jurisdiction which permits a court to entertain a claim that it otherwise would have no *subject matter jurisdiction* over.  See 13D Wright & Miller, Fed. Prac. & Pro., § 3567 (3d ed Aug. 2019).  Other courts have held that § 1367 applies only to *subject matter* jurisdiction, not personal jurisdiction.  See, e.g. Oneida Indian Nation of N.Y. v. Madison Co., 665 F.3d 408 (2d Cir. 2011).  This apparent conflict in the law need not be resolved herein, however, as the court dispenses with plaintiffs' supplemental jurisdiction argument on other grounds as discussed in the text of this opinion.

Section 1367 concerns only *subject matter jurisdiction*.  13D Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Pro., § 3567 (3d ed. Aug. 2019 update). The question here presented is a question of *personal jurisdiction* not implicated by § 1367.

However, some courts have recognized a *common law* concept of pendent *personal* jurisdiction which, where it is recognized, is a doctrine wholly unrelated to § 1367.  Id.  Under the common law concept of pendent personal jurisdiction, a court is allowed to entertain a claim against a defendant over whom it lacks personal jurisdiction as to that claim—"but only if that claim arises from a common nucleus of operative fact with a[nother] claim in the same suit for which the court *does have* personal jurisdiction over the defendant." Id. (emphasis added).

The court has not discovered any reported decision by either the Eighth Circuit or the District of South Dakota adopting the common law doctrine of pendent personal jurisdiction.  There are districts other than South Dakota within the Eighth Circuit that have employed the doctrine.  See, e.g. Aviva Life & Annuity Co. v. Davis, 20 F. Supp. 3d 694, 703-04 (S.D. Iowa 2014); Gatz v. Ponsoldt, 271 F. Supp. 2d 1143, 1154 (D. Neb. 2003).

Both concepts then—supplemental jurisdiction (if applicable) and pendent personal jurisdiction—require the plaintiff to demonstrate there is a claim in the lawsuit over which the court *does* have personal jurisdiction regarding the defendant before the court is allowed to exercise jurisdiction over a claim involving the defendant where the court *does not* have personal

10

jurisdiction.  Heavy and Zurich pin their hopes of establishing personal jurisdiction on their federal claim under the Magnuson-Moss Act and the assertion that Kumho Vietnam has sufficient national contacts to satisfy personal jurisdiction for this federal claim.

Kumho Vietnam argues that Heavy and Zurich's Magnuson-Moss claim cannot provide a basis for the court to exercise federal question jurisdiction because the claim itself is frivolous.  Kumho Vietnam argues that the Magnuson-Moss Act applies only to "consumer goods" purchased by "consumers," and that purchases of products by a commercial entity such as Heavy for admittedly commercial uses does not fall within the auspices of the Magnuson-Moss Act.

The Magnuson-Moss Act grants the holder of a warranty a federal cause of action for a breach of warranty under the applicable state law.  Sipe v. Workhorse Custom Chassis, LLC, 572 F.3d 525, 530 (8th Cir. 2009).  The Act provides additional remedies when consumers purchase consumer products that do not measure up to the implied and explicit warranties for those products.  See 15 U.S.C. § 2310.  The Act defines "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes."  See 15 U.S.C. § 2301(1).  A "consumer" is defined by the Act as "a buyer. . . of any consumer product . . ."  Id. at (3).

The Federal Trade Commission has promulgated regulations implementing the Magnuson-Moss Act.  Those regulations provide that if a

product is "normally" used for personal, family, or household purposes, it is a "consumer product" regardless of the *actual* use put to it by the actual buyer. See 16 C.F.R. § 700.1(a). Any ambiguity about whether a particular product is covered by the Act is resolved in favor of coverage. Id.

Kumho Vietnam does not address the FTC's regulation quoted above. Heavy and Zurich do not address the merits of their Magnuson-Moss claim or the FTC regulation. The court has many unanswered questions that are not addressed by either party. For example, what is the proper inquiry? Is the question whether all tires are consumer products? Or is the inquiry whether all tires *of this type* consumer products (if so, how do you define the tire type involved in this case)? Although the Kumho tire in this case was put to a commercial use, what use are these types of tires typically put to?

Airplane tires for 747s are probably categorically never consumer products because no one would ever use them for personal, family or household purposes. See, e.g. Waypoint Aviation Serv., Inc. v. Sandel Avionics, Inc., 469 F.3d 1071 (7th Cir. 2006) (casting doubt on whether "airplanes" as a category can be consumer products under Magnuson-Moss); Kwiatkowski v. Volvo Trucks North America, Inc., 500 F. Supp. 2d 875, (N.D. Ill. 2007) (holding that semi-tractor trailer truck was categorically not a consumer product under Magnuson-Moss). Are these types of tires ever used by families or individuals for their personal vehicles? Is that even the proper inquiry?

Kumho Vietnam also argues the Magnuson-Moss Act only applies where damages are at least $50,000. It then spuriously argues the damages here are

12

less than $50,000 because Heavy is claiming property damage in only the amount of $8,000. This, of course, ignores the remainder of Heavy and Zurich's claim for relief which ask for compensation for the worker's compensation benefits paid out on behalf of Justin Hawk Wing. The court will not conclude that Heavy and Zurich are incapable of demonstrating $50,000 in damages as a matter of law.

Even if the court assumes the Eighth Circuit would endorse the doctrine of pendent personal jurisdiction, whether to exercise such personal jurisdiction in a particular case is within the court's discretion. See Rilley v. MoneyMutual, LLC, 2018 WL 4778411 at *2 (D. Minn. Oct. 3, 2018) (holding in the absence of Eighth Circuit authority adopting the doctrine of pendent party jurisdiction, and in the absence of a claim over which the court could exercise personal jurisdiction over defendant based on nationwide contacts, the court would not apply the doctrine of pendent party jurisdiction). Here, the court recommends the district court exercise its discretion and elect not to exercise pendent personal jurisdiction.

Heavy and Zurich's claim to pendent personal jurisdiction rests on the viability of their Magnuson-Moss Act claim. As detailed above, the parties have not sufficiently fleshed out the issues so that the court can discern whether the Magnuson-Moss Act claim is even colorable. As such, at the present stage, basing personal jurisdiction on the slim reed of the Magnuson-Moss Act claim—and applying a common law doctrine that has not yet been adopted by the Eighth Circuit--is too far a reach.

Heavy and Zurich must demonstrate a basis for jurisdiction, if at all, under the minimum contacts test by demonstrating a *prima facie* case of jurisdiction built upon contacts between Kumho Vietnam and South Dakota.

### b.    Specific Personal Jurisdiction

Heavy and Zurich emphasize repeatedly the contacts that *KTUSA* has with South Dakota, but they do not assert any contacts by *Kumho Vietnam* itself. <u>See</u> Docket No. 46 at pp. 10-14. Secondarily, they emphasize the contacts Kumho Tire Co., Inc. has with South Dakota. <u>Id.</u>

In its motion to dismiss, Kumho Vietnam asserts that it had *no contacts* with South Dakota at all. The only contact it had was the accident tire that Kumho Vietnam manufactured in Vietnam made its way into South Dakota. But even this cannot confer jurisdiction, Kumho Vietnam argues, because Kumho Vietnam relinquished ownership, possession, custody and control of the tire in favor of KTUSA at the port of Vung Tau in Vietnam. Thus, Kumho Vietnam argues it did not know, intend, or project that the tire was going to end up in South Dakota. It did not direct its activities to South Dakota. It is not registered to do business in South Dakota, it never emailed or telephoned South Dakota, and it did not advertise in South Dakota. Plaintiffs do not dispute these assertions.

In the <u>Calder</u> case, the defendants, authors of an allegedly libelous *National Enquirer* magazine article, argued that they had no contacts with California, the forum state, because—although they wrote the article (in Florida)—they were not responsible for *circulation* of the article in, among other

14

places, California; the magazine itself undertook circulation.  Calder, 465 U.S. at 789.

The Court rejected this argument.  Id.  Although the defendants did not personally circulate their article in California, they "expressly aimed" "their intentional, and allegedly tortious, actions" at California.  Id.  Evidence showed the article's authors knew the *National Enquirer* had its "largest circulation" in California and, because that is where the plaintiff lived and had her employment as a movie and television actress, the article would have "a potentially devastating impact" in California.  Id. at 789-90.  The Calder Court found sufficient minimum contacts to allow California to exercise jurisdiction.  Id. at 788-89.  Other facts supporting the minimum contacts analysis were that the writers had made phone calls to California sources for the information in their article, the article concerned the plaintiff's activities in California, and the reputational injury to plaintiff was experienced in California.  Id.

In Walden, plaintiffs brought a Bivens[3] action in Nevada against a Georgia Drug Enforcement Agency (DEA) officer who intercepted plaintiffs in the Atlanta, Georgia, airport and seized $97,000 in cash from them.  Walden, 571 U.S. at 279.  The plaintiffs were bound for Nevada—Atlanta was merely a stopover in their journey—and they had a residence in Nevada.  Id. at 280.  The DEA agent seized the money and told plaintiffs it would be returned at a later

---

[3] Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).  The Bivens decision recognized a federal corollary to § 1983 actions by allowing plaintiffs to obtain money damages from federal employees who purposefully violate the plaintiffs' constitutional rights while acting under color of federal law.

time assuming they could demonstrate their possession of the money was legitimate. <u>Id.</u> The next day, plaintiffs' Nevada lawyer contacted the DEA agent via telephone and sought return of the money on plaintiffs' behalf. <u>Id.</u> On two subsequent occasions, the DEA agent received documentation from the same Nevada lawyer regarding the legitimacy of the funds. <u>Id.</u>

The DEA agent drafted an allegedly false and misleading affidavit in support of forfeiture, which he forwarded to the United States Attorney's Office in Georgia. <u>Id.</u> at 280-81. Ultimately, no forfeiture complaint was filed and the DEA agent returned plaintiffs' money to them some seven months later. <u>Id.</u> at 281.

The Court held that the DEA agent did not have sufficient minimum contacts with Nevada to support personal jurisdiction over him there. <u>Id.</u> at 288. The Court emphasized that courts should not focus on the defendant's contacts with people within the forum—here, the plaintiffs—but rather with the forum itself. <u>Id.</u> at 288-89. The Court also cautioned that lower courts should not focus only on the fact that the harm may be felt in the forum state. <u>Id.</u> Here, the DEA agent never traveled to Nevada, all his actions in seizing the cash and drafting the affidavit took place in Georgia, he never conducted activities in Nevada, he never contacted any person in Nevada, and he never sent anyone or anything to Nevada. <u>Id.</u> The Nevada attorney's contact with the DEA agent was unilateral activity—it involved only the Nevada person contacting the DEA agent, not the reverse—and such unilateral activity could not alone support the exercise of jurisdiction. <u>Id.</u>

16

The Court criticized the lower court's conclusion that jurisdiction would lie merely because it was foreseeable that harm would occur in Nevada. Id. at 289. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id. at 290. The Court noted the harm plaintiffs suffered from denial of access to their money would have been suffered in any forum in which they happened to be, whether that was Nevada, California, Mississippi or anywhere else—unlike the harm in Calder which was uniquely tied to the forum state because the libelous article was written about events supposedly occurring in California where the plaintiff resided and worked. Id.

Applying the five factors set forth by the Eighth Circuit, the court concludes there is no specific personal jurisdiction over Kumho Vietnam based on its contacts with South Dakota. (1) the only contact Kumho Vietnam has with South Dakota is that its tire ended up here. When evaluating a defendant's contacts with the forum state, physical entry into the forum either by the defendant in person, by an agent of the defendant, or by the defendant's goods, is "certainly a relevant contact." Walden, 571 U.S. at 285 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 773-74, 781 (1984) (where defendant "deliberately exploited" a market in the forum state by circulating magazines there)). The court takes into account the fact that Kumho Vietnam relinquished possession, custody and control of the tire in Vietnam, which undermines this contact somewhat. (2) the quantity of contacts Kumho Vietnam has is singular: only the fact of its tire being here. (3) the relation of

17

the cause of action to the contact is direct—the cause of action arises directly out of the presence of Kumho Vietnam's tire here.  (4) the interest of the forum state in providing a forum for its residents is high, of course, but this factor is offset by the fact that plaintiffs have also sued the parent company, Kumho South Korea, which is not contesting jurisdiction, and the distributor of the tire, KTUSA, which also does not contest jurisdiction.  This ensures plaintiffs have a forum and defendants with resources to sue in this forum.
(5) convenience of the parties.  This is a split factor; plaintiffs would be convenienced, but Kumho Vietnam would be greatly inconvenienced.

The J. McIntyre Machinery, Ltd. case is instructive.  There, a plaintiff in New Jersey was injured by a machine manufactured by J. McIntyre Machinery, Ltd. in England.  J. McIntyre Mach., Ltd., 564 U.S. at 878.  The plaintiff brought a products liability action in state court in New Jersey and J. McIntyre contested personal jurisdiction.  Id.  J. McIntyre did not itself sell its machine in the United States.  Id.  Instead, J. McIntyre sold its products to a distributor which was not under J. McIntyre's control and the distributor sold the J. McIntyre machines in the United States.  Id.  J. McIntyre attended various conventions in the United States to advertise its products, but never attended such a convention in New Jersey.  Id.  J. McIntyre held some United States patents on its technology.  Id.  In addition, the distributor accepted direction and guidance from J. McIntyre whenever possible in the distributor's advertising and sales activities.  Id. at 879.

18

The plaintiff, relying on World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980), argued that J. McIntyre was subject to New Jersey's personal jurisdiction because it had launched its product into the "stream of commerce" and that product ended up in New Jersey.  The Court in World-Wide had stated that if a manufacturer placed its goods into the stream of commerce "with the expectation that they will be purchased by consumers from the forum state," this may establish the defendant's purposeful availment of the forum.  J. McIntyre Mach., Ltd., 564 U.S. at 881-82 (citing World-Wide Volkswagen Corp., 444 U.S. at 298).  The plurality Court held in Justice Kennedy's opinion in J. McIntyre Mach., Ltd. this was a misinterpretation of its precedent.  Id. at 881-82.

The case of Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Co., 480 U.S. 102, 112 (1987) (O'Connor, J., concurring)[4], clarified that a manufacturer placing its product in the stream of commerce, standing alone, would never be enough to satisfy due process.  Instead, there would have to be other contacts, such as a showing the defendant intended to serve the market in the forum state by designing the product for the market in the forum state, advertising in the forum state, establishing channels for providing regular customer advice in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state.  Id. The manufacturer's mere knowledge that his product will end up in the state

---

[4] The Asahi Metal case was a plurality opinion, with no five Justices agreeing on one analysis or outcome.

after the manufacturer places the product into the stream of commerce is not sufficient.  Id.

Justice Kennedy's opinion in J. McIntyre Mach., Ltd. built on the statement in Asahi.  The opinion stated that the "stream of commerce" idea discussed in Asahi and World-Wide Volkswagen merely stated the "unexceptional proposition" that where a manufacturer specifically seeks to serve the forum state's market, personal jurisdiction may lie even without the manufacturer's personal presence in the forum.  J. McIntyre Mach., Ltd., 564 U.S. at 882.  "The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."  Id.

Analyzing the facts of the case before it, the Kennedy opinion noted that J. McIntyre may very well have sufficient minimum contacts with the *nation*, but the appropriate inquiry was whether it had sufficient contacts with *New Jersey*.  Id. at 886.  The plaintiff failed to establish that J. McIntyre purposefully directed any conduct toward New Jersey.  Id.  Aside from never attending any trade shows in New Jersey, the Court noted the manufacturer never paid taxes there, did not own property there, had no office there, did not advertise there, and never sent any employees there.  Id.  In short, the only contact between J. McIntyre and New Jersey was that its machine ended up there.  Id.  The Court held New Jersey could not exercise personal jurisdiction over the English manufacturer.  Id. at 887.

Although the J. McIntyre opinion was a plurality opinion, Justice

Breyer's competing concurring opinion also agreed that, under the facts

presented, New Jersey could not permissibly exercise personal jurisdiction over

J. McIntyre.  J. McIntyre Mach., Ltd., 564 U.S. at 887-93 (Breyer, J.,

concurring).  Therefore, six Justices agreed that, under the facts of the case,

New Jersey could not exercise personal jurisdiction over the English

manufacturer.[5]

After the fractured opinions in Asahi and J. McIntyre, the Court was able

to issue a unanimous opinion authored by Justice Ginsburg in Goodyear

Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011).  There, the court

held (unsurprisingly perhaps) that North Carolina could not exercise general

personal jurisdiction over a foreign corporation in a lawsuit alleging a defective

tire manufactured in Turkey, sold abroad, and involved in a fatal bus accident

in France.[6]

The North Carolina state courts had concluded they had general personal

jurisdiction over the Turkish tire manufacturer because, even though the

accident tire did not reach North Carolina, a small number of the Turkish tires

did reach North Carolina.  Id. at 919-20.  Thus, the North Carolina courts—

"confusing or blending general and specific jurisdictional inquiries" according

---

[5] Three Justices--Ginsburg, Sotomayor and Kagan—would have held that New
Jersey could exercise personal jurisdiction consistent with due process.
J. McIntyre Mach., Ltd., 564 U.S. at 910 (opinion of Ginsburg, Justice).

[6] The connection with North Carolina was that was the state of domicile of two
of the decedents in the bus accident.  Goodyear, 564 U.S. at 918.

to the Supreme Court—found general jurisdiction because the Turkish company had placed its tires into the "stream of commerce" and some of those tires landed in North Carolina.  Id.  This was error.

The parent company of the Turkish manufacturer, Goodyear USA, was a named defendant in the North Carolina suit and did not contest personal jurisdiction.  Id. at 921.  In contrast, the Turkish company was not registered to do business in the forum; did not have a physical presence there; held no bank accounts there; did not design, manufacture, or advertise their products in the forum; did not solicit business there, and did not themselves sell or ship tires to North Carolina.  Id.  Still, some of the Turkish defendant's tires were distributed in North Carolina by other affiliates of Goodyear USA.  Id.  These tires arrived in North Carolina without the Turkish manufacturer having undertaken any affirmative action to cause the tires to reach that destination.  Id. at 922.  The plaintiffs premised their jurisdiction argument on Goodyear USA's "highly-organized distribution process" through subsidiaries other than the Turkish company.  Id.  Because the accident did not occur in North Carolina, the plaintiffs necessarily invoked general personal jurisdiction.  Id.

The Supreme Court clarified that stream-of-commerce considerations apply only to the concept of specific jurisdiction, and that even then it is only one among many contacts between the defendant and the forum to be considered.  Id. at 926-27.  The fact that a company placed its product into the stream of commerce and it ended up in the forum state is not a valid consideration under the doctrine of general jurisdiction.  Id.

22

In 2017, the Court issued an 8:1 opinion in Bristol-Myers Squibb Co. v. Superior Ct. of Calif., San Francisco Co, 582 U.S. ___, 137 S. Ct. 1773 (2017). There, the Court rejected California's assertion of specific jurisdiction for a products liability action over an out-of-state domestic drug manufacturer. Id. at 1777-78. There were 600 plaintiffs in the case, with 86 California residents and 592 residents of 33 other states. Id. The California courts had adopted what the Court termed a "sliding scale approach" to specific jurisdiction which the Court held confused the principles of general and specific jurisdiction: the more general contacts the defendant had with the state, the less strong the connection between the forum and the specific claims at issue were required by the California court's reasoning. Id. at 1781. The Court rejected this approach, stating that "a corporation's continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." Id. (cleaned up).

The great preponderance of the plaintiffs had no connection with California—they did not buy, ingest, or suffer injury as a result of the drug, Plavix, in California. Id. The Court held the fact that the California plaintiffs did have a connection with the forum and allegedly suffered the same injuries as the out-of-state plaintiffs was insufficient to establish specific jurisdiction. Id. The defendant had its principal place of business outside the forum, did not develop Plavix in the forum, did not create a marketing strategy for Plavix in the forum, did not manufacture, label, package or work on regulatory approval for Plavix in California. Id. at 1778. The mere fact that the defendant

conducted research on *other* drugs in California, maintained a sales force in California, and hired a California company to distribute Plavix nationally was not sufficient to satisfy minimum contacts because these activities by the defendant were not connected to Plavix and the great majority of plaintiffs who brought suit in the litigation.  Id. at 1781-83.

The Bristol-Meyers Court distinguished the Court's earlier decision in Keeton, stating that the Keeton plaintiff lived in the forum state, a substantial number of the defendant's magazines were distributed in the forum (as well as elsewhere), and the effects of the allegedly libelous statements would be felt by the plaintiff in the forum state.  Id. at 1782 (discussing Keeton, 465 U.S. at 774, 776, and 778 n.9).  The court noted the nature of harm resulting from libel harms both the subject of the falsehood as well as the readers—a fact the court held amply distinguished the facts of Keeton from the present case.  Id.

The Eighth Circuit Viasystems case is also relevant. Viasystems, the plaintiff, was a Missouri corporation that undertook to manufacture telecommunications equipment for a Swedish company, to be installed in a mobile phone facility in Japan.  Viasystems, 646 F.3d at 592.  In order to fulfill its contract, Viasystems purchased cooling fans manufactured by a German company in Germany.  Id.  The German fans were shipped through intermediaries from Germany to China to Japan; the fans at no time entered the United States.  Id.  Later, the German fans failed due to alleged manufacturing defects and Viasystems sued the German manufacturer in the Eastern District of Missouri, asserting contract and tort claims.  Id.  The

24

defendant contested the district court's personal jurisdiction over it and the district court dismissed.  Id. at 591.  The Eighth Circuit affirmed.  Id. at 592.

The plaintiff argued the court had specific personal jurisdiction over the defendant because after the problem with the fans arose, the defendant sent several emails, made phone calls, made a partial payment to Viasystems for its losses, and the effects of the defendant's tortious conduct were felt by Viasystems in Missouri.  Id. at 593.  The court held that defendant's contacts with Missouri were simply not the type of "deliberate" and "substantial connection" with Missouri such that, consistent with due process, it could "reasonably anticipate being haled into court there."  Id. at 594.  The court also noted specific personal jurisdiction could not be premised on the effects of the tort being felt in Missouri without evidence the defendant's actions were intentional and were uniquely or expressly aimed at Missouri.  Id.

In Viasystems, the Eighth Circuit noted it had in the past adopted a variation of the stream-of-commerce test.  Id. at 597.  Under the Eighth Circuit test, mere placement of a product into the stream of commerce alone is insufficient to satisfy due process.  Id.  The court had, however, recognized jurisdiction over a defendant who "pours its products" into a distribution network "with the expectation that the distributor will penetrate a discrete, multi-State trade area."  Id. at 597 (citing Vandelune v. 4B Elevator Components Unltd., 148 F.3d 943, 948 (8th Cir. 1998)).

However, the Eighth Circuit appeared to concede that this "pouring of products" theory had itself been called into question by the Supreme Court in

Goodyear.  The court concluded by stating, "[o]ur precedent and the Supreme Court's decision in Goodyear make clear that even if a foreign corporation "pours its products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area, that contact alone was too limited to serve as the basis for *general* jurisdiction." Id. (cleaned up). The Eighth Circuit specifically noted that its decision in Steinbuch v. Cutler, 518 F.3d 580 (8th Cir. 2008) "does not survive Goodyear." Viasystems, F.3d at 597 n.4.  The Steinbuch opinion applied stream of commerce in a general jurisdiction analysis. Steinbuch, 518 F.3d at 587-88.

The Vandelune case upon which the Viasystems court relied for its modified stream of commerce approach, appears to continue to be good law.  In Vandelune, the plaintiff was injured in a grain dust explosion at a grain elevator and he brought products liability claims for defective design, manufacture, and failure to warn against Synatel, a British company which had manufactured a device designed to warn and shut down a grain elevator conveyor belt if there is a stoppage or slow down of the belt.  Vandelune, 148 F.3d at 945.  The device was manufactured by Synatel in Great Britain, sold to Braime Elevator of Great Britain, distributed in America by 4B, which was a Braime affiliate in Illinois, then sold to a retailer in Iowa, which in turn sold the device to the plaintiff's Iowa employer, where the device was installed.  Id. at 945-46.  Synatel contested the Iowa court's exercise of personal jurisdiction over it.  Id. at 947.

26

The Eighth Circuit treated the question as to whether introducing a product in the stream of commerce was sufficient to establish personal jurisdiction as an open question because the Asahi court was split 4:4 on the question. Id. The court noted that if a product ends up in a forum state on an "attenuated, random, or fortuitous basis [then the defendant manufacturer] has not purposefully directed its activities at residents of that state" so as to satisfy due process requirements. Id. at 948 (cleaned up). However, the court held "when a foreign manufacturer pours its products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-state trade area, the manufacturer has purposefully reaped the benefits of the laws of each state in that trade area for due process purposes." Id. (cleaned up).

The evidence in the case, the court held, showed purposeful availment of the benefits of the Iowa market such that Synatel was properly subject to the Iowa's jurisdiction. Id. Those facts included evidence Synatel designed its product specifically for the United States market in substantial grain elevators; that Synatel put decals distinctive to the ultimate distributor, 4B, on its products before shipping them; some of the products were shipped directly to the American distributor, 4B, instead of going through the British distributor first; some Synatel employees attended technical support meetings at 4B's facilities only 80 miles from the Iowa border; and approximately 12 percent of the model product at issue manufactured by Synatel were resold in Iowa. Id. The court concluded these were not random, attenuated contacts with Iowa

27

and that the Iowa court could permissibly exercise personal jurisdiction over Synatel.  Id.

The Barone case similarly found specific personal jurisdiction to exist over a Japanese fireworks manufacturer where between 51-92 percent of its product was sold (through intermediary distributors) in the United States and 16 percent of its fireworks were sold in the forum state of Nebraska.  Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 611, 615 (8th Cir. 1994).  The Japanese defendant also sent price lists, purchase terms, and shipping information, as well as proof of compliance with various American federal regulations, directly to distributors in the United States.  Id.  The court held the facts showed "more than reasonable foreseeability" to the Japanese defendant that it would be haled into court in Nebraska.  Id. at 615.

In this case the only contact between Kumho Vietnam and South Dakota is the presence of the Kumho Vietnam-manufactured tire here.  There is no evidence that Kumho Vietnam's actions constitute an intentional tort.  There is no evidence Kumho Vietnam uniquely or expressly aimed its actions at South Dakota.  Unlike the grain elevator product involved in Vandelune, which by its very nature could be said to demonstrate the defendant targeted the midwestern "region" and "poured" its products into that "region" (because grain is mostly harvested in the Midwest), here, the product is a tire, which is even more ubiquitous than the drug which was at issue in the Bristol-Meyers case was.  A tire, like a drug prescribed for a common medical condition, can be expected to have wide and fairly even per capita distribution.  The fact that

28

Kumho Vietnam's tire ended up in South Dakota in the present case is not such persuasive evidence of defendant's targeting of South Dakota as was the fact that a grain elevator product ended up in Iowa.

Aside from the presence of the tire here and the effects of the non-intentional tort being felt here, there is no other connection between South Dakota and Kumho Vietnam.  The connections between Kumho Vietnam and South Dakota are not as attenuated as the contacts between the Turkish tire manufacturer and North Carolina in the Goodyear case.  But they are also not the kind of substantial contacts found to support jurisdiction in Barone and Vandelune; the contacts are more like the attenuated contacts in Viasystems and Bristol-Meyers.

A defendant who sends its product but not any of its agents into a forum will be subject to the forum's personal jurisdiction "only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." J. McIntyre Mach., Ltd., 564 U.S. at 882 (opinion of Kennedy, J.).  While some of Kumho Vietnam's product clearly made its way into South Dakota, there is no showing that this defendant purposefully directed its activities toward South Dakota, toward a multi-state region including South Dakota, or that its sales of tires in South Dakota were of such volume that "more than reasonable foreseeability" is involved regarding the potential to be haled into court here. These facts are insufficient to establish specific personal jurisdiction over Kumho Vietnam.  Bristol-Meyers Squibb Co., 137 S. Ct. at 1784; J. McIntyre

29

Mach., Ltd., 564 U.S. at 887; Viasystems, 646 F.3d at 594-95.  See also

Humble v. Toyota Motor Co., Ltd., 27 F.2d 709, 710-11 (8th Cir. 1984)

(rejecting stream-of-commerce argument and holding Northern District of Iowa

could not exercise personal jurisdiction over Japanese seat manufacturer in

products liability action where defendant manufactured its seats in Japan,

gave them to Toyota in Japan, Toyota installed the seats in Toyota vehicles,

and Toyota in turn sold some of those vehicles containing defendant's seats in

Iowa); Hutson v. Fehr Bros., Inc., 584 F.2d 833, 837 (8th Cir. 1978) (holding

Western District of Arkansas could not exercise personal jurisdiction over

foreign chain manufacturer in a products liability case where the defendant

merely sold the chain to a distributor who in turn brought the chain to the

United States and sold it here).[7]

The court notes that Heavy and Zurich argue that Kumho Tire of South

Korea exercises dominion and control over KTUSA and Kumho Vietnam as its

subsidiaries.  But there is no allegation by plaintiffs that Kumho Vietnam

exercises dominion and control over KTUSA or Kumho Tire of South Korea.  As

discussed below, where the out-of-forum corporation treats the in-forum

corporation as its puppet, personal jurisdiction may sometimes be exercised

over the out-of-jurisdiction puppeteer.  Here, the alleged puppeteer is a party

before the court that is not contesting jurisdiction.  It is the alleged puppet

corporation that is the foreign corporation.  Thus, Kumho Tire's contacts

---

[7] Both Humble and Hutson were cited approvingly in Justice O'Connor's
opinion in Asahi (see Asahi Metal Indus. Co., Ltd., 480 U.S. at 111).

cannot be attributed to Kumho Vietnam for purposes of establishing minimum contacts sufficient to support the exercise of specific personal jurisdiction.  The alleged tentacles of control are running the wrong way.

####    c.    Alter Ego Theory

Typically, parent corporations are not liable for the acts of their wholly owned subsidiaries.  United States v. Bestfoods, 524 U.S. 51, 61 (1998).  However, where "the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the [subsidiary] corporation to act as the [parent] corporate defendant's alter ego," then the "subsidiary's contacts [with the forum] are those of the parent corporation's, and due process is satisfied."  Epps v. Stewart Information Servs. Corp., 327 F.3d 642, 649 (8th Cir. 2003).

In Epps, the question was whether personal jurisdiction could be exercised over a non-resident parent corporation based on the contacts between the subsidiary corporation's contacts with the forum.  Id.  Similarly, in Van Dusseldorp, the plaintiff tried to make a case for exerting personal jurisdiction over the parent corporation based on the admitted jurisdiction over the subsidiary.  Van Dusseldorp, 2017 WL 4004421 at *5-6.

Here, the parent corporation is defendant Kumho South Korea, a corporation which does not contest this court's personal jurisdiction.  It is the subsidiary foreign corporation, Kumho Vietnam, which is seeking to avoid personal jurisdiction.  Thus, this case presents the obverse of Epps and Van Dusseldorp:  plaintiffs seek to assert jurisdiction over the *subsidiary* based on

the *parent* corporation's contacts with the forum.  In addition, plaintiffs describe in great detail the contacts KTUSA has with the forum and urge this as a basis for exerting jurisdiction over Kumho Vietnam.  KTUSA and Kumho Vietnam are parallel subsidiary corporations—one might say sibling corporations—of Kumho South Korea.  Therefore, utilizing KTUSA's contacts to bootstrap personal jurisdiction over Kumho Vietnam is doubly removed from the analysis in Epps and Van Dusseldorp.

If the corporation over whom a plaintiff asserts personal jurisdiction fails the specific jurisdiction test, there is the suggestion in Epps that asserting jurisdiction via the alter ego theory must demonstrate general jurisdiction over the related corporation over which the court concededly *does* have jurisdiction. Epps, 327 F.3d at 650 (stating "for purposes of specific personal jurisdiction, we must consider whether [the parent corporation] itself had minimum contacts with [the forum] to subject itself to the personal jurisdiction of the District Court.  If direct minimum contacts are not present, we must determine whether we can properly pierce [the subsidiary's] corporate veil under the alter-ego approach to *establish general personal jurisdiction* over [the parent.]") (emphasis added).  State law applies to determine whether and how to pierce the corporate veil.  Epps, 327 F.3d at 649.

Under South Dakota law, a parent corporation is liable for the acts of its subsidiary if there is an agency relationship between the two corporations. Glanzer v. St. Joseph Indian Sch., 438 N.W.2d 204, 207 (S.D. 1989).  Another exception exists under the instrumentality exception if the plaintiff can show

(1) the parent controls the subsidiary to such an extent that the subsidiary is rendered a mere instrumentality of the parent; and (2) adhering to the rule of corporate separateness would be unjust or inequitable.  Id.

Under the first factor of the instrumentality test, the South Dakota Supreme Court has identified a number of factors to consider:  whether the parent owns most of the subsidiary's capital stock, whether the two corporations have common directors or officers, whether the parent finances the subsidiary, whether the parent subscribes to all of the subsidiary's stock or otherwise causes the subsidiary to be incorporated, whether the subsidiary is grossly undercapitalized, whether subsidiary corporate officers' salaries or other expenses are paid by the parent, whether all the subsidiary's business is with the parent, whether the subsidiary's assets were conveyed to it by the parent, whether the parent describes the subsidiary as a department or division of the parent, whether the parent uses the subsidiary's property as its own, and whether the subsidiary's officers and directors act in the best interests of the subsidiary or the parent.  Id.  This District has summarized the factors pithily:  has the plaintiff shown that "the subsidiary is a dummy or a sham corporation or undercapitalized"?  Van Dusseldorp, 2017 WL 4004421 at *7 (citing Bestfoods, 524 U.S. at 69-70).

In Epps, the court rejected the alter ego theory of personal jurisdiction where plaintiffs proved the subsidiary corporation was wholly owned by the parent and the parent claimed the subsidiary's assets and liabilities as its own. Epps, 327 F.3d at 650-51.  In Epps, there was an intervening level of corporate

existence that plaintiffs did not explore or explain.  Id.  Under these circumstances, the overlapping ownership evidence was simply "too distant and limited a contact" to satisfy due process.  Id. at 650.

In the Van Dusseldorp case, the court found the plaintiff failed to establish evidence of mere instrumentality.  Id.  Significantly, plaintiff did not establish undercapitalization of the subsidiary, parent financing of the subsidiary, parent paying the salaries/expenses of the subsidiary, parent uses the subsidiary's property as its own, subsidiary has no business apart from the parent's, and legal requirements of the subsidiary not observed.  Id.  Therefore, even though the parent appointed the officers and directors of the subsidiary and indirectly owned the subsidiary through an intermediary company, this was not sufficient to carry plaintiff's burden of proof.  Id.

As noted above, the power being exerted runs the wrong way in this case to establish alter ego jurisdiction.  If Kumho Vietnam exercised control and dominion over KTUSA or over Kumho South Korea, there would be an argument to be made in favor of alter ego jurisdiction.  But here, it is Kumho South Korea that is alleged to exercise control and dominion over Kumho Vietnam.  Under these facts, Kumho South Korea's contacts cannot be imputed to Kumho Vietnam.  Neither can KTUSA's contacts be imputed to Kumho Vietnam because plaintiffs have made no showing that Kumho Vietnam exercises control and dominion over KTUSA.

Finally, the court notes that plaintiffs have not shown it would be unjust or inequitable to observe the rule of corporate separateness.  Plaintiffs have

asserted, among other claims, claims for strict products liability.  See Docket No. 12.  Under South Dakota law, any seller of the defective product anywhere in the chain of distribution can be held liable for the injury caused by the defect.  See Peterson v. Safway Steel Scaffolds Co., 400 N.W.2d 909, 912 (S.D. 1987).  And, strict liability does not require proof that the defendant knew of the defect when the product was sold.  Id.  Here, KTUSA and Kumho South Korea have been named and do not dispute this court's personal jurisdiction over them.  Plaintiffs fail to show why, if they prove up their claims, adequate recourse will be unavailable to them from these two defendants.  The court recommends that plaintiffs' alter ego theory be rejected.

### d.    Close Relationship

In the same vein as alter ego, Heavy and Zurich assert there is personal jurisdiction over Kumho Vietnam because there is a "close relationship" between Kumho Vietnam and KTUSA/Kumho South Korea.  Plaintiffs cite Viasystems, already discussed above, and Anderson v. Dassault Aviation, 361 F.3d 449 (8th Cir. 2004), in support of this assertion.

The Anderson case involved, again, a fact pattern involving a puppeteer-parent corporation that was outside the forum, and a puppet-wholly-owned subsidiary corporation that was inside the forum.  Anderson, 361 F.3d at 452.  Thus, as discussed above, Anderson is distinguishable because the tentacles of control run opposite from the tentacles of control in this case.  The Anderson case is also distinguishable because the actions of the puppet-subsidiary in the forum went well beyond the mere ownership and control by the parent.

35

In <u>Anderson</u>, in a very real sense, the product (an airplane) was partially manufactured in the forum by the subsidiary.  <u>Id.</u> at 451-52.  There is no allegation in this case that KTUSA or Kumho South Korea finishes manufacturing Kumho Vietnam's tires in South Dakota.

In addition, the parent company in <u>Anderson</u> prominently featured its subsidiary's production plant in the forum in its marketing and shareholder materials.  <u>Id.</u> at 453.  Finally, the majority of the parent corporation's planes were flown into the forum state to be finished at the subsidiary's plant there. <u>Id.</u>  There is no evidence in this case that any literature of any of the three defendants mentions South Dakota at all, let alone prominently features South Dakota.  There is no evidence that the majority of Kumho Vietnam's tires pass through South Dakota.  The court rejects the "close association" argument in this case.  The facts simply do not support the application of that precedent herein.

**B.    Statute of Limitations**

Kumho Vietnam also argues that it should be dismissed from this lawsuit because the claims asserted against it in the amended complaint are barred by the statute of limitations.  The court need not rule on this argument as it has concluded that South Dakota does not have personal jurisdiction over Kumho Vietnam.

## CONCLUSION

Based on the foregoing law, facts and analysis, this magistrate judge respectfully recommends that the motion to dismiss by defendant Kumho Vietnam [Docket No. 38] be granted in part and denied in part.

Defendant Kumho Vietnam's motion is styled a motion to dismiss Heavy and Zurich's amended complaint. See Docket No. 38. For the reason that none of defendant's pleadings in support of the motion address the claims in the amended complaint asserted against Kumho South Korea or KTUSA, the court recommends that portion of defendant's motion be denied. The court does recommend granting defendant's motion insofar as the claims asserted against Kumho Vietnam. The court recommends that defendant Kumho Vietnam be dismissed from this lawsuit.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED January 22, 2020.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

37